IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ALLYSA MARIE ANDERSON, INDIVIDUALLY AND AS NEXT FRIEND OF I.W., A MINOR | § | |
| *Plaintiff* | § | |
| | § | CASE NO. ____________________ |
| v. | § | |
| TARRANT COUNTY, TEXAS AND ALEXANDRIA LYNN VENABLE | § | |
| *Defendants* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE COURT:

Plaintiff Alyssa Marie Anderson, Individually as next friend of I.W., a minor, files this Original Complaint against Defendants Tarrant County, Texas and Alexandria Lynn Venable, and would respectfully show the Court as follows:

## I. NATURE OF THE ACTION

1. This civil-rights action arises from the sexual exploitation and abuse of a fifteen-year-old child while he was confined in the custody of Tarrant County at the Lynn W. Ross Juvenile Detention Center, now known as the Tarrant County Juvenile Detention Center.

2. I.W. was a juvenile detainee entirely dependent upon Tarrant County and its employees for his safety, supervision, medical care, security, and protection.

3. Defendant Alexandria Lynn Venable was an adult Tarrant County juvenile probation officer who possessed authority over I.W. and access to him by virtue of her public employment.

4. Rather than protect I.W., Venable exploited that authority and access to establish an inappropriate and unlawful sexual relationship with him.

5. The misconduct began while I.W. was under County supervision outside the detention facility at John Peter Smith Hospital ("JPS Hospital").

6. Venable thereafter communicated privately with Plaintiff through a contraband cellular telephone.

7. The relationship progressed to sexual encounters occurring inside the juvenile detention facility itself.

8. I.W. was fifteen years old at the time of the encounters.

9. Venable was approximately thirty-three years old when the misconduct began.

10. I.W. could not legally consent to sexual contact with an adult correctional or juvenile-justice employee exercising custodial authority over him.

11. Upon information and belief, other Tarrant County employees knew, suspected, observed, or were presented with circumstances indicating that Venable was maintaining an improper relationship with I.W. but failed to timely report, investigate, intervene, or protect him.

12. I.W. further understands that Venable engaged in substantially similar misconduct involving at least one other juvenile detainee.

13. The presently known information does not establish whether that additional misconduct occurred before, contemporaneously with, or after the misconduct involving I.W.

14. The existence of another juvenile allegedly subjected to substantially similar conduct by the same County employee is nevertheless relevant to the adequacy of the County's supervision, monitoring, reporting, investigation, and protection of detained juveniles.

15. Tarrant County ultimately terminated Venable's employment.

16. Venable was arrested in connection with her conduct involving I.W.

17. According to information presently available to Plaintiff, Venable admitted after her arrest that sexual contact with I.W. had occurred.

18. Criminal proceedings followed.

19. A sworn criminal complaint charged Venable with four offenses arising out of sexual conduct involving I.W. on or about November 13, 2024.

20. A Tarrant County grand jury subsequently returned a four-count indictment against Venable based upon the same alleged conduct.

## II. JURISDICTION

21. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

22. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

23. Plaintiff seeks redress for violations of rights secured by the Fourteenth Amendment to the United States Constitution.

24. To the extent Plaintiff asserts state-law causes of action after further investigation or amendment, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts.

## III. VENUE

25. Venue is proper in the Northern District of Texas under 28 U.S.C. § 1391(b).

26. Tarrant County lies within the Fort Worth Division of this District.

27. A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Tarrant County, Texas, including at the Lynn W. Ross Juvenile Detention Center and JPS Hospital.

## IV. PARTIES

28. I.W. is a minor.

29. I.W. proceeds through his natural mother and next friend, Alyssa Marie Anderson.

30. I.W. uses the initials "I.W." because he was a minor victim of alleged sexual abuse while confined in a juvenile detention facility.

31. Plaintiff Alyssa Marie Anderson is an individual who resides in Tarrant County and is the natural mother of I.W.

32. Defendant Tarrant County, Texas is a political subdivision of the State of Texas and is a "person" subject to liability under 42 U.S.C. § 1983.

33. Tarrant County operated, controlled, funded, staffed, supervised, and/or exercised policymaking authority over functions of the juvenile detention facility material to this case.

34. Defendant Alexandria Lynn Venable was at all relevant times employed as a juvenile probation officer or other juvenile-justice employee working at or in connection with the juvenile detention facility.

35. Venable is sued in her individual capacity.

36. At all relevant times, Venable acted under color of state law and exercised authority made possible only because of her position with Tarrant County.

## V. FACTUAL ALLEGATIONS

### A. Plaintiff's Detention

37. In or about November 2024, I.W. was fifteen years old and detained at the Lynn W. Ross Juvenile Detention Center.

38. While detained, I.W. could not leave the facility at will.

39. Tarrant County and its employees controlled where I.W. went, with whom he interacted, when he received medical care, and who had access to him.

40. The County therefore exercised extraordinary control over I.W.'s physical safety and daily life.

41. Juveniles confined in detention facilities are particularly vulnerable to manipulation and exploitation by adult employees exercising custodial power over them.

42. Tarrant County knew or should have known that strict professional boundaries, monitoring, supervision, reporting mechanisms, and enforcement procedures were necessary to protect confined children from sexual exploitation by employees.

### B. Venable's Position of Authority

43. Venable was an adult employee entrusted with access to detained juveniles.

44. Venable's position gave her authority, credibility, access, and opportunities for private interaction with I.W. that an ordinary member of the public would not have possessed.

45. I.W. reasonably understood that Venable was part of the governmental system controlling his confinement.

46. Venable's access to I.W. was therefore inseparable from her public employment.

## C. Initial Contact at JPS Hospital

47. On or about November 13, 2024, I.W. was transported or taken to JPS Hospital while still in County custody.

48. I.W. remained a detainee during that encounter and remained subject to governmental custody and control.

49. Venable had access to I.W. at JPS Hospital because of her employment and authority.

50. During or in connection with that encounter, Venable began initiating improper and personal contact with I.W.

51. The encounter at JPS Hospital was the beginning of conduct that developed into a prohibited sexual relationship.

52. The County's responsibility to protect I.W. did not cease merely because he was temporarily outside the physical walls of the detention facility.

## D. Contraband Communications

53. After the initial encounter, Venable maintained private communications with I.W. through a contraband cellular telephone.

54. The use of a contraband phone enabled communications outside ordinary institutional monitoring and supervision.

55. Such communications were inconsistent with appropriate professional boundaries between a juvenile detainee and an adult employee exercising custodial authority.

56. The existence and continuing use of the contraband phone reflected failures in detection, supervision, monitoring, reporting, or enforcement within the juvenile detention system.

57. Upon information and belief, the communications were used by Venable to cultivate and maintain the improper relationship.

58. The communications facilitated later sexual encounters.

## E. Sexual Conduct Inside the Detention Facility

59. Venable thereafter engaged in sexual conduct with I.W. inside the juvenile detention facility.

60. These encounters could occur only because Venable possessed access to I.W. through her employment and because institutional safeguards failed to prevent or promptly detect the misconduct.

61. I.W. was a child younger than seventeen at all relevant times.

62. I.W. remained in governmental custody throughout the relevant period.

63. Venable was an adult employee with authority over detained juveniles.

64. Any purported acquiescence by I.W. did not eliminate the custodial power imbalance, did not make the conduct lawful, and did not extinguish his constitutional right to bodily integrity and protection from sexual abuse by governmental actors.

## F. Knowledge of Other Employees

65. I.W. alleges that other guards and employees knew what was occurring between Venable and I.W.

66. Upon information and belief, County personnel observed or became aware of warning signs including inappropriate familiarity, unusual access, private communications,

deviations from professional boundaries, preferential treatment, suspicious interactions, or other circumstances inconsistent with legitimate staff-detainee relationships.

67. Despite such knowledge or warning signs, employees failed to make a timely and effective report, intervene, ensure that Venable was separated from I.W., initiate an adequate investigation before further harm occurred, and/or take reasonable measures to prevent additional sexual contact.

68. Any employee who actually knew that a juvenile detainee faced a substantial risk of sexual exploitation by an adult staff member and consciously failed to act was deliberately indifferent to I.W.'s constitutional rights.

**G. <u>Similar Allegations Involving Another Juvenile</u>**

69. I.W. has learned that Venable was also implicated in substantially similar inappropriate or sexual conduct involving another juvenile detainee.

70. I.W. does not presently know whether the second incident occurred before, during, or after the conduct involving I.W.

71. Plaintiff therefore does not presently allege that County policymakers had notice of that incident before I.W. was harmed unless discovery establishes such notice.

72. The incident is nevertheless relevant to whether Venable's conduct was isolated, whether institutional safeguards were effective, how misconduct was detected, whether warning signs were missed, whether employees failed to report suspicious conduct, and whether the County's systems for preventing sexual abuse were adequate.

73. Plaintiff expects discovery to establish the timing, nature, reporting history, and institutional response to the additional incident.

## H. Termination and Criminal Proceedings

74. Tarrant County eventually terminated Venable.

75. Venable was arrested.

76. According to information available to Plaintiff, Venable admitted that sexual contact occurred.

77. On January 20, 2026, a sworn criminal complaint was executed in Tarrant County case number 1904527.

78. The criminal complaint identifies I.W. and alleges that on or about November 13, 2024, while I.W. was in custody at the Lynn W. Ross Juvenile Detention Center, Venable intentionally employed, authorized, or induced him to engage in sexual conduct or sexual performance.

79. The complaint further alleges that Venable engaged in sexual contact by touching I.W.'s genitals.

80. It additionally alleges that Venable caused I.W. to touch her genitals.

81. It further alleges that Venable caused I.W. to touch her breast.

82. A Tarrant County grand jury subsequently returned Indictment No. 1904527 containing four counts based upon substantially the same conduct.

83. The indictment identifies I.W. as a child younger than seventeen and as an individual in custody at the Lynn W. Ross Juvenile Detention Center.

84. The indictment further alleges that Venable was an official, employee, or compensated person working at that juvenile facility.

85. The criminal prosecution remains separate from this civil action.

## VI. TARRANT COUNTY'S POLICIES, CUSTOMS, PRACTICES, AND DELIBERATE INDIFFERENCE

86. Tarrant County had a constitutional obligation to maintain reasonable systems protecting juvenile detainees from sexual abuse by employees.

87. Plaintiff alleges, upon information and belief and subject to discovery, that I.W.'s injuries resulted from one or more official policies, widespread customs, persistent practices, decisions of policymakers, and deliberately indifferent failures by Tarrant County.

### A. Inadequate Supervision and Monitoring

88. Tarrant County failed to maintain adequate systems for monitoring interactions between juvenile detainees and adult employees.

89. The County permitted employees to obtain access to juvenile detainees under circumstances in which inappropriate communications or sexual misconduct could occur without timely detection.

90. The County failed to maintain adequate supervision concerning employee-detainee interactions at the facility.

91. The County failed to adequately supervise employee contact with detainees during outside medical treatment and transportation.

92. The County failed to ensure sufficient monitoring of areas or circumstances in which employees could isolate juveniles from meaningful oversight.

### B. Failure to Detect and Control Contraband Communications

93. Tarrant County knew that contraband telephones and unmonitored electronic communications created serious security and exploitation risks inside juvenile detention facilities.

94. Nevertheless, the County failed to implement or adequately enforce effective procedures for detecting prohibited electronic communications between employees and detained juveniles.

95. Those failures permitted Venable to maintain private communications with I.W. outside ordinary institutional oversight.

## C. Failure to Enforce Professional Boundaries

96. Tarrant County knew that sexual relationships between adult employees and juvenile detainees were prohibited and presented obvious risks of constitutional injury.

97. The County was required to train and supervise employees regarding professional boundaries and mandatory reporting.

98. Upon information and belief, the County's actual enforcement practices were inadequate to detect and stop the conduct alleged herein.

## D. Failure to Report and Intervene

99. Plaintiff alleges that County employees knew or suspected that Venable was engaged in an improper relationship with I.W.

100. The failure of multiple employees to promptly report, investigate, and intervene permits an inference that reporting rules were inadequately trained, inadequately enforced, routinely disregarded, or otherwise ineffective.

101. If discovery confirms that multiple employees knew of the misconduct but failed to report it, such evidence will further demonstrate a culture or custom of tolerance, silence, non-enforcement, or deliberate indifference regarding sexual-boundary violations.

**E. Failure to Train**

102. The need to adequately train employees who supervise confined minors regarding sexual abuse prevention, professional boundaries, contraband communications, mandatory reporting, and intervention is obvious.

103. Inadequate training in these areas creates an obvious risk that vulnerable juvenile detainees will be sexually exploited.

104. Upon information and belief, the County failed to provide adequate training regarding one or more of these subjects or failed to ensure that such training was meaningfully implemented and enforced.

105. The County's failure to train amounted to deliberate indifference to the constitutional rights of juveniles in its custody.

**F. Failure to Supervise and Discipline**

106. Tarrant County failed to adequately supervise personnel entrusted with extraordinary authority over detained children.

107. Upon information and belief, supervisory practices did not reasonably detect improper relationships, unauthorized communications, grooming behavior, or violations of professional boundaries.

108. The County also failed to maintain adequate disciplinary practices sufficient to deter such conduct.

109. Discovery is expected to reveal prior complaints, disciplinary histories, internal investigations, supervisory records, PREA records, staffing records, communications, training records, and other evidence relevant to these allegations.

### G. Policymaker Allegations

110. The acts and omissions described above were undertaken, authorized, approved, tolerated, or maintained by officials possessing final policymaking authority for the relevant functions, or were so persistent and widespread as to constitute County custom.

111. Plaintiff will identify the responsible final policymaker or policymakers with greater particularity after obtaining governing documents, delegation materials, policies, organizational records, deposition testimony, and other discovery concerning the allocation of policymaking authority over juvenile detention operations.

112. Plaintiff does not rely upon respondeat superior to impose § 1983 liability on Tarrant County.

113. Rather, Plaintiff alleges that an official policy, custom, practice, policymaker decision, or deliberately indifferent failure attributable to Tarrant County was a moving force behind I.W.'s constitutional injuries.

## VII. COUNT ONE - DEFENDANT ALEXANDRIA LYNN VENABLE
## 42 U.S.C. § 1983 - FOURTEENTH AMENDMENT
## SEXUAL ABUSE AND BODILY INTEGRITY

114. Plaintiff incorporates the preceding paragraphs.

115. At all relevant times, Venable acted under color of state law.

116. Venable's authority over I.W. arose from her employment with Tarrant County and her role within the juvenile justice system.

117. I.W. had a clearly established constitutional right to bodily integrity and to be free from sexual abuse by an adult governmental employee exercising custodial authority over him.

118. Venable intentionally violated that right.

119. Venable exploited I.W.'s confinement, age, vulnerability, and custodial dependence.

120. Venable's conduct was intentional, objectively unreasonable, conscience-shocking, and undertaken for no legitimate governmental purpose.

121. Venable's actions directly and proximately caused I.W.'s injuries and damages.

122. Because Venable's conduct was intentional, malicious, reckless, and callously indifferent to I.W.'s federally protected rights, Plaintiff seeks punitive damages against her individually.

## VIII. COUNT TWO – DEFENDANT TARRANT COUNTY
## 42 U.S.C. § 1983 - FAILURE TO PROTECT / DELIBERATE INDIFFERENCE

123. Plaintiff incorporates the preceding paragraphs.

124. County employees other than Venable acted under color of state law.

125. I.W. was a vulnerable juvenile detainee in governmental custody.

126. One or more County employees other than Venable knew of facts indicating that Venable presented a substantial risk of sexual exploitation or abuse to I.W.

127. Those employees drew, or reasonably may be inferred to have drawn, the conclusion that I.W. faced such a risk.

128. Nevertheless, they consciously failed to take reasonable protective action.

129. Reasonable actions available to them included reporting the conduct, separating Venable from I.W., notifying supervisors, securing the contraband phone, initiating an investigation, increasing monitoring, documenting suspicious conduct, or otherwise preventing additional access.

130. Their deliberate indifference caused or prolonged I.W.'s exposure to sexual abuse.

131. Their conduct violated I.W.'s rights under the Fourteenth Amendment.

**IX. COUNT THREE – TARRANT COUNTY**
**42 U.S.C. § 1983 – COUNTY/GOVERNMENTAL LIABILITY**

132. Plaintiff incorporates the preceding paragraphs.

133. I.W.'s constitutional injuries were caused by one or more policies, customs, practices, policymaker decisions, or deliberately indifferent omissions attributable to Tarrant County.

134. Those unconstitutional conditions included inadequate supervision and monitoring of staff-detainee interactions; inadequate detection and prevention of contraband communications; inadequate enforcement of professional-boundary rules; inadequate reporting and intervention practices; inadequate training regarding prevention, recognition, reporting, and intervention concerning custodial sexual abuse; and inadequate supervision and discipline of personnel exercising authority over detained minors.

135. The need for adequate safeguards was obvious because Tarrant County confined children and placed them under the direct authority of adult employees.

136. Sexual abuse of a child by an adult detention employee is a highly predictable consequence of deliberately inadequate supervision, reporting, monitoring, and training.

137. Tarrant County's policies, customs, practices, and deliberate indifference were moving forces behind the violation of I.W.'s constitutional rights.

138. Plaintiff seeks compensatory damages, and all other relief permitted against Tarrant County under § 1983, but does not seek punitive damages from the County.

**X. COUNT FOUR – TARRANT COUNTY**
**42 U.S.C. § 1983 - SUPERVISORY LIABILITY**

139. Plaintiff incorporates the preceding paragraphs.

140. Plaintiff alleges that one or more County employees in supervisory positions were personally involved in constitutionally deficient supervision, received information concerning inappropriate conduct or warning signs, implemented or enforced deficient practices, or consciously failed to act despite knowledge of an obvious risk to I.W.

141. To the extent discovery establishes that any supervisor had actual knowledge of the risk presented by Venable and deliberately failed to respond, that supervisor is individually liable under § 1983.

142. Plaintiff will amend to identify those individuals and particularize their conduct when their identities and roles become known.

## XI. INJURIES AND DAMAGES

143. As a direct and proximate result of Defendants' conduct, I.W. has suffered and will continue to suffer substantial damages.

144. I.W.'s injuries include past and future mental anguish.

145. I.W. has experienced psychological trauma.

146. I.W. has also experienced anxiety, depression, fear, shame, humiliation, and loss of trust.

147. I.W. has required or is reasonably expected to require medical, psychiatric, psychological, or counseling treatment.

148. I.W. has suffered loss of enjoyment of life.

149. I.W. has suffered interference with educational, emotional, social, and developmental opportunities.

150. I.W. has suffered other non-economic damages recoverable under federal law.

151. Plaintiff and I.W. seek past and future medical and mental-health expenses to the extent recoverable.

152. Plaintiff and I.W. seek compensatory damages in an amount to be determined by the jury.

153. I.W. seeks punitive damages against the individual Defendants to the extent permitted by law.

154. Plaintiff and I.W. seek reasonable attorney's fees and litigation expenses pursuant to 42 U.S.C. § 1988.

155. Plaintiff seeks taxable costs.

156. Plaintiff and I.W. seek pre-judgment and post-judgment interest as allowed by law.

## XII. CONDITIONS PRECEDENT

157. All conditions precedent to Plaintiff's and I.W.'s claims have occurred, have been satisfied, or have been excused.

158. Plaintiff and I.W. provided Tarrant County written notice of their claims without conceding that such notice was required for their federal claims.

## XIII. PRESERVATION OF EVIDENCE

158. Tarrant County has been placed on notice to preserve evidence relevant to I.W.'s claims.

159. Relevant evidence includes surveillance video; transportation records; JPS-related records; incident reports; staffing and shift logs; personnel files; disciplinary files; internal-affairs files; PREA reports and investigations; training materials; policies and procedures;

electronic communications; emails; text messages; cellular telephone extraction data; access logs; visitor logs; juvenile housing records; investigation records; termination materials; and records concerning similar allegations involving Venable.

156. Plaintiff and I.W. reserve all rights and remedies concerning spoliation or loss of relevant evidence.

## XIV. JURY DEMAND

157. Plaintiff demands a trial by jury on all issues so triable.

## XV. PRAYER

WHEREFORE, Plaintiff Alyssa Marie Anderson, Individually and as next friend of I.W., a minor, respectfully requests that Defendants be cited to appear and answer and that, following trial, the Court enter judgment awarding:

a. Compensatory damages in an amount determined by the jury;

b. Past and future mental anguish and emotional-distress damages;

c. Past and future medical and mental-health expenses as permitted by law;

d. Damages for impairment, loss of enjoyment of life, and loss of educational and developmental opportunities;

e. Punitive damages against Defendant Venable and any other individual Defendant against whom punitive damages are legally recoverable;

f. Reasonable attorney's fees and litigation expenses under 42 U.S.C. § 1988;

g. Costs of court;

h. Pre-judgment and post-judgment interest as allowed by law;

i. Such declaratory or equitable relief, if any, as the Court determines appropriate; and

j. All other relief, at law or in equity, to which Plaintiff and/or I.W. may show themselves entitled.

Respectfully Submitted,

By: */s/ Greg Jackson*

Roger D. "Rocky" Walton
Texas State Bar No. 20828300
Greg Jackson
Texas State Bar No. 00794018
gjackson@rockywalton.com
filings@rockywalton.com

**ROCKY WALTON INJURY LAWYERS**
2310 West Interstate 20, Suite 200
Arlington, Texas 76017
Telephone: (817) 429-4299
Fax: (817) 429-3469

ATTORNEYS FOR PLAINTIFF